# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SEAN ESCARRA,

        Plaintiff,

v.                                                             Case No. 8:24-cv-1562-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

        Defendant.

## OPINION AND ORDER[2]

### I.   Status

Sean Escarra ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of sleep apnea, cervical strain, choroidal nevus, benign melanocytic lesions, reduced vision in his right eye, nerve damage in his toe, a chest wall condition with associated pain, post-traumatic stress disorder ("PTSD") and

---

[1] Frank Bisignano was recently confirmed as the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

associated panic attacks/night terrors, anxiety, depression, and bipolar disorder. Transcript of Administrative Proceedings (Doc. No. 10; "Tr." or "administrative transcript"), filed August 26, 2024, at 93, 106, 433, 485. Plaintiff protectively filed an application for DIB on May 12, 2021, alleging a disability onset date of May 10, 2021.[3] Tr. at 391-94. The application was denied initially, Tr. at 92, 93-104, 144-47, and upon reconsideration, Tr. at 105, 106-15, 155-58.[4]

On December 12, 2022, an Administrative Law Judge ("ALJ") held a hearing,[5] during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 65-91. On February 7, 2023, the ALJ issued a decision finding Plaintiff not disabled through the date of the decision. Tr. at 119-30. Plaintiff sought review of the decision by the Appeals Council and submitted a brief in support of the request. Tr. at 254-56 (request for review), 574-77 (brief). On June 20, 2023, the Appeals Council granted review and remanded the matter to an ALJ to resolve whether Plaintiff

---

[3] Although actually completed on May 14, 2021, see Tr. at 391, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as May 12, 2021, see, e.g., Tr. at 93, 106.

[4] Some of these documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

[5] The hearing was held via telephone with Plaintiff's consent. See Tr. at 67.

- 2 -

"has a medically determinable headache disorder in accordance with Social Security Ruling 19-4p." Tr. at 140, 139-40.

On October 20, 2023, the ALJ held another hearing,[6] during which he heard testimony from Plaintiff, who was represented by counsel, and a VE. See Tr. at 34-64. On January 9, 2024, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 10-24.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by his representative. See Tr. at 4-5 (Appeals Council exhibit list and order), 385-87 (request for review), 605-06 (brief). On April 24, 2024, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On June 28, 2024, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ erred in: 1) failing "to consider [his] migraines in accordance with Social Security Ruling 19-4p" and when assessing Plaintiff's residual functional capacity ("RFC"); 2) failing "to address Plaintiff's PTSD at step two and step three"; and 3) "failing to correct error between the [VE's] testimony and the Dictionary of Occupat[io]nal Titles at step five."

---

[6] The hearing was held via telephone with Plaintiff's consent. See Tr. at 36.

Plaintiff's Brief (Doc. No. 14; "Pl.'s Br."), filed October 4, 2024, at 4 (capitalization omitted); see id. at 5-14 (issue one), 14-18 (issue two), 18-21 (issue three). On November 4, 2024, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 15; "Def.'s Mem.") addressing Plaintiff's arguments.

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of Plaintiff's PTSD at step two and in later sequential evaluation steps (Plaintiff's issue two). On remand, this reconsideration may impact the Administration's consideration of the remaining issues on appeal. For this reason, the Court need not address the parties' arguments on those issues. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 12-24. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 10, 2021, the alleged onset date." Tr. at 12 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: disorders of the spine; sensorineural hearing loss; obesity;

---

[7] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

and depressive, bipolar, and related disorders." Tr. at 12 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 13 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) except he could lift and/or carry 20 pounds occasionally and ten pounds frequently. He could stand and or walk for six hours out of an eight-hour workday. He could sit for six hours out of an eight-hour workday. He could frequently balance, kneel, crouch, crawl, and climb ramps and stairs. He could occasionally stoop. He should never climb ladders, ropes, or scaffolds. He could frequently reach overhead with the left arm and finger with the left hand. He should avoid concentrated exposure to noise, vibrations, and workplace hazards. He could tolerate moderate levels of noise (as defined in Appendix D of the Selected Characteristics of Occupations). He should avoid work requiring telephonic communication. He should avoid work that takes place outdoors in bright sunshine or involves exposure to bright or flickering lights (such as would be seen while welding or cutting metals). He could understand, remember, and carry out simple, routine, and repetitive tasks that involves simple, work-related decision-making. He could adapt to routine workplace changes. He should avoid all interaction with the public. He would need to be off-task for five percent of the workday and would miss one workday per quarter.

Tr. at 17 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "firearms inspector" and an "air crew egress system mechanic." Tr. at 22 (some emphasis and citation omitted). The ALJ then

proceeded to step five. After considering Plaintiff's age ("32 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 22 (emphasis and citations omitted), such as "bagger," "marker," and "bottling line attendant," Tr. at 23 (emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from May 10, 2021, through the date of th[e D]ecision." Tr. at 24 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v.

Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

Plaintiff argues the ALJ erred at steps two and three in failing to consider his diagnosed PTSD. Pl.'s Br. at 14-18. Responding, Defendant contends that the ALJ "considered Plaintiff's mental impairments, by whatever name they are labeled, and provided substantial evidence supporting his assessment of Plaintiff's mental RFC." Def.'s Mem. at 14 (emphasis omitted).

Step two of the sequential evaluation process requires the ALJ to determine whether a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "This step is a

'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (quoting McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986)).

"[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id. A claimant has the burden of proving that impairments are severe. See Bowen, 482 U.S. at 146 n.5 (recognizing the claimant's burden of proof at step two to show "a medically severe impairment or combination of impairments"). Further, the impairment either "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509; see also Walker v. Comm'r, Soc. Sec. Admin., 835 F. App'x 538, 542 (11th Cir. 2020) (unpublished).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen, 482 U.S. at 141; Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101 (11th Cir. 2021) (citing 20 C.F.R. § 404.1520(c)). The Regulations provide six examples of "basic work activities": "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching,

carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1522; see also Walker, 835 F. App'x at 541-52. "The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 902 (11th Cir. 2011) (unpublished).

Any error in identifying severe impairments at step two is harmless if "the ALJ considered all of [the] impairments in combination at later steps in the evaluation process." Burgin, 420 F. App'x at 903 (citation omitted); see Schink, 935 F.3d at 1268 (a step two error "could be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered [the claimant's] mental impairment when assessing his RFC, and reached conclusions about [the claimant's] mental capacities supported by substantial evidence"); Heatly, 382 F. App'x at 825 (stating that an "ALJ is required to demonstrate that [he or she] has considered all of the claimant's impairments, whether severe or not, in combination"); Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984) (finding that an ALJ must make "specific and well-articulated

- 10 -

findings as to the effect of the combination of impairments").

At step three, the burden rests on the claimant to prove the existence of a Listing-level impairment. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., id.; see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson, 284 F.3d at 1224 (internal quotations and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." Id. (internal quotations and citations omitted).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink, 935 F.3d at 1268); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990)

(stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Plaintiff is a veteran who experiences PTSD symptoms both from his time in the U.S. Air Force and from childhood experiences. See, e.g., Tr. at 1658-59. As the ALJ recognized, he has required the use of a service dog to help with his symptoms. See Tr. at 18, 20 (finding "[h]e does not leave home without his service dog" and "[h]e can take care of his service dog").

The ALJ, when making the step two findings, determined that Plaintiff suffers from the mental impairments of "depressive, bipolar, and related disorders." Tr. at 12. It is unclear what the ALJ meant by "related disorders," but the ALJ did not list PTSD at step two. Then, at step three, the ALJ examined various listings in detail, but on the mental side, did not discuss the listing for PTSD. Tr. at 13-17. The ALJ did mention PTSD when making the "B" criteria findings, Tr. at 15-16, and later in the sequential evaluation inquiry, the ALJ specifically mentioned PTSD when discussing Plaintiff's allegations. Tr. at 18. Then, in discussing the medical evidence, the ALJ wrote that Plaintiff's "psychological symptoms" were "less than disabling," citing various normal examination findings appearing throughout the record. Tr. at 20 (citations omitted). Regarding Plaintiff's PTSD symptoms, the ALJ cited

various reports from June 2021 through January 2022[8] in which Plaintiff reportedly said he his medications improved his symptoms, and he was doing well overall, although his sleep was poor. Tr. at 20 (citations omitted).

Ordinarily, this type of discussion would likely suffice to cure any error at earlier steps regarding Plaintiff's PTSD, as Defendant argues, see Def.'s Mem. at 14-15. However, the ALJ failed to address any evidence post-dating early January 2022. The omission is problematic because this evidence undermines the ALJ's findings on the PTSD symptomology.

True, on January 3, 2022, Plaintiff reported to psychiatrist Dylan Lahiff, M.D., that his medications do help some with PTSD symptoms, but he is only "good" about eighty percent of the time until "something sets [him] off." Tr. at 1074. Dr. Lahiff wrote that interpersonal conflicts and worsening migraines and pain were likely contributing to his symptoms. Tr. at 1074. Plaintiff's sleep had "mildly" improved with a change of the timing of trazodone. Tr. at 1075. Plaintiff was advised to follow up with a primary care physician regarding other reported symptoms of dyspnea, dizziness, and "episodes of [unreadable]." Tr. at 1076.

But, by January 11, 2022, Plaintiff appeared for a follow up for PTSD and reported syncope four times in the past six months in which he "[had] stiffness

---

[8] The ALJ did cite some later records in making the normal examination findings, but most of those were not even mental health records. See Tr. at 20 (citations omitted).

- 13 -

in the shoulder, [got] tunnel vision, then passe[d] out." Tr. at 1066. One time, he hit his head. Tr. at 1066; see Tr. at 1070, 1073. Plaintiff also reported getting "fatigue, cold sweats, [and] shortness of breath." Tr. at 1066. On March 21, 2022, Plaintiff reported poor sleep and "inadvertently" taking more medication than prescribed ("beyond FDA maximum"). Tr. at 1052-55. By January 2023, Plaintiff reported to a resident at the VA that he was "dissatisfied regarding his care at the PTSD clinic" because even though it had "helped minimally with his PTSD symptoms," the clinic had "not done anything to address his anxiety and depression symptoms which exacerbate his PTSD." Tr. at 1610.

Nor it appear that the ALJ considered a summary letter from Plaintiff's counselor, Kendell Bowlin, MDTSI, dated December 14, 2022. See Tr. at 12-17 (ALJ's Decision); Tr. at 1123-24 (Mr. Bowlin's letter). In the letter, Mr. Bowlin indicates that Plaintiff has been in counseling for PTSD, completing six sessions from September 2022 through December 2022, and has endorsed symptoms including recent past suicidal ideation, anxiety, low self-esteem, hopelessness, and feeling "triggered and on edge in almost any situation." Tr. at 1123-24.

In sum, the Court is not convinced that the ALJ adequately considered Plaintiff's PTSD and related symptomology at any point in the sequential evaluation process, and the findings the ALJ did make are not supported by substantial evidence. The matter must be reversed and remanded for further consideration of Plaintiff's PTSD and its effects.

## V.   Conclusion

In light of the foregoing, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)     Reconsider whether Plaintiff's PTSD is severe at step two and ensure adequate consideration of it in later steps in the sequential evaluation process;

(B)     If necessary, address Plaintiff's other arguments in this appeal; and

(C)     Take such other action as may be necessary to resolve this claim properly.

2.     The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 29, 2025.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record